LETIZIA V. GALLUCI, ELVIRA VALORI and SERAFINO VALORI,
Plaintiffs,

*vs.*

ALBERT N. SHUE and ANNE F. SHUE,
Defendants.

*New Castle, June 15, 1962.*

*Joseph A. L. Errigo, O. Francis Biondi* and *Harvey Porter,*
Wilmington, for plaintiffs.

*Joseph T. Walsh* and *Ciro C. Poppiti,* Wilmington, for defendants.

SEITZ, Chancellor: This is the decision on plaintiff's request for
a preliminary injunction to enjoin defendants from applying for or
obtaining a liquor license at 2800 Lancaster Avenue or at any other
location when such action is a means of transferring the existing
license at 2803 Lancaster Avenue and to enjoin them from discon-
tinuing the business at 2803 Lancaster Avenue.

Plaintiff's leased the premises at 2803 Lancaster Avenue to defendants in accordance with a lease agreement dated December 1, 1959, to run for five years beginning December 19, 1959. In a separate sales agreement, dated October 12, 1959, defendants contracted to buy the taproom business at 2803 Lancaster Avenue from another party who then had a license therefor. Both of these agreements were contingent on defendants' obtaining a tavern or taproom license at the leased premises from the Delaware Alcoholic Beverage Control Commission. A taproom liquor license was subsequently obtained and the two agreements were thereby put into effect.

The lease agreement between plaintiffs and defendants contains the following provisions relevant to this controversy:

"12. That in the event the said LESSEES do not obtain a tavern or taproom license from the Delaware Alcoholic Beverage Control Commission, this lease shall be declared null and void, and the first month's rent paid by the said LESSEES to the said LESSORS shall be repaid to the LESSEES.

"13. The LESSEES shall not have any right nor privilege to transfer the liquor license obtained by them from the Delaware Alcoholic Liquor Commission to any other establishment owned, rented or controlled by the LESSEES either directly or indirectly, nor to any third party during the term of this lease, or any extension thereof. In the event said LESSEES make such transfer of their license during the term of this lease or any extension thereof such act on the part of said LESSEES shall be deemed a violation of the terms and provisions of this lease, and the LESSORS shall have the immediate right to give appropriate notice to said LESSEES terminating this lease in the same manner as heretofore stated.

"14. At the termination of this lease or any extension thereof, the LESSEES shall offer to sell the business at 2803 Lancaster Avenue, to the LESSORS and in the event the LESSEES obtain a bona fide buyer for said business, the LESSORS shall have the right to purchase said business from the LESSEES for the same price offered by any bona fide buyer. In any event, before any sale of said business is made to any third party by

the LESSEES, the LESSORS shall be given the opportunity to purchase said business, at a price that shall be established by mutual agreement of the parties involved. The LESSORS shall have thirty (30) days within which to decide this matter. The failure of the LESSORS to purchase the business of the LESSEES shall not be interpreted by the LESSEES as an indication that the LESSORS will grant a new lease to a purchaser obtained by the LESSEES."

Thus, Paragraph 13 prohibits a transfer of the liquor license to any other location or to any third party during the course of the lease period, and Paragraph 14 gives the plaintiffs the option of first refusal to buy the business at the termination of the lease. The lease agreement does not contain an express covenant that defendants will not operate a similar business elsewhere either during or upon termination of the lease and decision not to renew, i.e., a covenant not to compete.

Approximately one year after the taproom license was issued, defendants had their liquor license changed from a "taproom" to a "restaurant" classification and continued to operate the business at 2803 Lancaster Avenue as a restaurant with liquor license.

During 1961 defendants decided to move their restaurant business to a new location because of the need for additional space. They leased premises for this purpose across the street at 2800 Lancaster Avenue. On October 11, 1961, defendant, Albert Shue, advertised in the newspaper his intention to apply to the Commission for a transfer of the restaurant license from 2803 to 2800 Lancaster Avenue.

At the hearing December 20, 1961, on defendant's application, the Commission ruled that it had no authority to transfer a license from one location to another, but only from one person to another person. The application was dismissed on the ground of defective advertising.

Defendant Albert Shue then advertised on December 22, 1961, his intention to apply for a new license to be used for a restaurant business at 2800 Lancaster Avenue. This second application was

filed on January 8, 1962, and the Commission scheduled a hearing thereon to be held April 11, 1962.

On April 10, 1962, plaintiffs filed suit requesting, inter alia, a temporary restraining order. The court temporarily restrained defendants from operating under a new license, if granted, at 2800 Lancaster Avenue. A preliminary injunction rule was also issued and this is the decision on the return thereof.

At the hearing before the Commission on April 11, 1962, the Commission reserved decision and it has been indicated that the Commission intends to await this court's decision.

Plaintiffs maintain that if defendants are allowed to obtain and operate under a liquor license at the proposed new location they will in effect be transferring the liquor license they now have from plaintiffs' premises to another location and will thereby violate Paragraph 13 of the lease agreement.

In answering this contention, it is important to recognize exactly what the defendants say they now intend to do in regard to both the present and the proposed new locations. Defendants have continued to make their monthly rental payments to plaintiffs for the premises at 2803. Presumably it is still being operated in accordance with the terms of the existing license. They began operation of a restaurant at the new location in March 1962, even though they were not able to sell alcoholic beverages at the new location.

Although their advertisement of October 11, 1961, in connection with the first application, was obviously an announcement of intention to transfer the restaurant license from the present location to the new, such is not now the case. The second advertisement on December 22, 1961, announced only their intention to apply for a new license at 2800 and did not refer to the disposition of the license at 2803.

Defendants' affidavit in opposition to the preliminary injunction, dated May 2, 1962, states that it is defendants' present decision to retain the liquor license at 2803. If their application for a restaurant license at 2800 is approved, they then plan to apply to the Commission for a change in classification of the license at 2803 from "restaurant"

to "taproom" and operate the business at 2803 as a taproom. This plan would thus restore the premises at 2803 to the same license classification in effect at the time defendants purchased the taproom business at 2803 and entered into the lease agreement with plaintiffs.

It is clear that if defendants maintain a liquor license at 2803 in their name until termination of the lease, they will not have breached Paragraph 13 of the lease agreement because they will not have transferred the license within the meaning of that word as employed in the lease. Since we are not dealing with the transfer of a license it is unnecessary to discuss the legality of such a procedure. Plaintiffs should not complain if the license classification is changed from "restaurant" back to "taproom" since the latter was the classification of the license expected to be obtained by defendants at 2803 at the time plaintiffs entered into the lease agreement with defendants.

Plaintiffs also contend that Paragraphs 12, 13 and 14 of the lease agreement, when read together and considered in conjunction with the surrounding circumstances, constitute a covenant not to compete. Such a construction is not compelled by the terms of the lease. Indeed, the surrounding circumstances suggest the possibility of an intentional omission of such a covenant. Moreover, covenants not to compete are not readily implied. *Rogers v. Jones, 38 Del.Ch.* 288, 150 *A.2d 327; 2 Callman, Unfair Competition and Trade-Marks,* § 64.4(b), p. 969. Therefore, there being no covenant not to compete, defendants were free to apply for a new license at 2800 Lancaster Avenue.

Plaintiffs further contend that if defendants are allowed to obtain and operate under a liquor license at the new location, such action will constitute waste to their reversionary interest in the premises at 2803. This argument is based on the assumption that the business at plaintiffs' property would be left without a liquor license with the consequence that the value of the business if they should exercise their option to purchase it or the rental value of the property at termination of the lease would be greatly depreciated. Without deciding whether or not a liquor license is properly the subject of waste, this argument is answered by the fact that there is no showing in this record that the old business will not be operated as it was when

the lease was executed. The expression of suspicion of diversion of customers found only in plaintiffs' brief is obviously not sufficient to move the court. Compare *Rogers v. Jones*, above.

The preliminary injunction will therefore be denied and the restraining order dissolved.